1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    LIZETH A.,

11                   Plaintiff,

12      v.

13    COMMISSIONER OF SOCIAL
      SECURITY,

14                 Defendant.

CASE NO. 2:22-cv-00625-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

15

16

17       This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

18   Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate

19   Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts. 17–19.

20       This case has had a complex procedural history over the past nine years. Because the

21   present ALJ relied on substantial evidence in determining that plaintiff performed substantial

22   gainful activity after the alleged onset date, and because the ALJ gave adequate reasoning in

23

24

1  discounting plaintiff's subjective testimony and the findings of several consultative examiners,

2  the Court affirms.

3  <u>PROCEDURAL HISTORY</u>

4      Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42

5  U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following

6  reconsideration. *See* AR 60, 70. Plaintiff's requested hearing was held before ALJ Virginia M.

7  Robinson on June 25, 2015. *See* AR 35–59. On October 20, 2015, ALJ Robinson issued a written

8  decision in which she concluded that plaintiff was not disabled pursuant to the Social Security

9  Act. *See* AR 17–34.

10      On February 15, 2017, the Appeals Council denied plaintiff's request for review, making

11  ALJ Robinson's decision the final agency decision subject to judicial review.  AR 1–6; *see* 20

12  C.F.R. § 404.981. Plaintiff filed a complaint seeking judicial review of the ALJ's written

13  decision in the U.S. District Court for the Eastern District of Washington on April 20, 2017. *See*

14  AR 442. On August 7, 2018, that Court reversed and remanded the ALJ's decision for further

15  proceedings. AR 456–83. This resulted in a new hearing before ALJ Kimberley Boyce on

16  August 21, 2019, at which plaintiff failed to appear due to a family member's illness. AR 406–

17  17. On October 9, 2019, ALJ Boyce issued a written decision in which she found plaintiff was

18  not disabled. AR 387–405. Plaintiff, who is now residing in the Western District of Washington,

19  filed a complaint seeking review in this Court on February 22, 2020. AR 853–55. Pursuant to the

20  parties' stipulation, this Court remanded the case on June 3, 2020. AR 856–61.

21      A third hearing, at which plaintiff appeared and testified, took place before ALJ Glenn

22  Meyers on January 11, 2022. AR 818–52. On February 2, 2022, ALJ Meyers ("the ALJ") issued

23  a decision in which he concluded plaintiff was not disabled. AR 717–42. Plaintiff filed the

24

1   complaint presently before this Court on June 13, 2022. Defendant filed the sealed administrative

2   record ("AR") regarding this matter on August 15, 2022. *See* Dkt. 13.

3                                            BACKGROUND

4          Plaintiff was born in 1992 and was 21 years old on the alleged date of disability onset of

5   December 4, 2013. *See* AR 720, 735. Plaintiff has a high school and some college education. AR

6   834. Prior to the alleged onset date, plaintiff worked jobs in retail and in fruit packing, although

7   plaintiff has more recently worked at daycare centers. AR 52, 826–27.

8          According to the ALJ, plaintiff has at least the severe impairments of eating disorder,

9   depression, and anxiety. AR 723.

10                                       STANDARD OF REVIEW

11         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

12  social security benefits if the ALJ's findings are based on legal error or not supported by

13  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

14  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

15                                            DISCUSSION

16         In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether the ALJ

17  erred in finding plaintiff engaged in substantial gainful activity after the alleged onset date; (2)

18  whether the ALJ properly evaluated plaintiff's subjective testimony; and (3) whether the ALJ

19  properly evaluated the medical opinion evidence. *See* Dkt. 17, p. 2.

20

21

22

23

24

1

**1. Whether the ALJ Erred at Step One in Finding Plaintiff had Performed**

2

**Substantial Gainful Activity**

3

4

Plaintiff first challenges the ALJ's assessment, in the first step of the disability evaluation

process, finding that she had engaged in substantial gainful activity after the alleged onset date.

5

Dkt. 17, at 3.

6

An individual who is engaged in "substantial gainful activity" ("SGA") is not disabled.

7

42 U.S.C. § 423(d) (1) (A); *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. §

8

416.920(b).  SGA is activity that is both "substantial" and "gainful."  20 C.F.R. § 416.972

9

(definition of SGA).  "Substantial work activity" involves "significant physical or mental

10

activities" and may include part-time work and work that pays less or involves fewer

11

responsibilities than previous work.  20 C.F.R. § 416.972(a).  "Gainful" work activity is work

12

activity that is "usually done for pay or profit."  20 C.F.R. § 416.972(b).  It is the claimant's

13

burden to show that he or she is not engaged in substantial gainful activity. *See Bowen v.*

14

*Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

15

1999) (citation omitted) (noting in a footnote that "the ALJ shares the burden at each step" due to

16

the affirmative duty of the ALJ to assist in the development of the record as well as the non-

17

adversarial nature of the social security application process).

18

Earnings may show that an individual is engaged in SGA. 20 C.F.R. § 416.974(a)(1). An

19

individual earning more than a certain amount each month is presumed to be engaged in SGA.

20

*Katz v. Secretary of Health & Human Services*, 972 F.2d 290, 293 (9th Cir. 1992) (earnings

21

beyond a certain guideline create a rebuttable presumption of SGA) (citing *Keyes v. Sullivan*,

22

894 F.2d 1053, 1056 (9th Cir. 1990)); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b) (2) (setting forth

23

the monthly guideline). Part-time work that pays less than full-time work can still be SGA. *Katz*,

24

972 F.2d at 292 (*citing Keyes*, 894 F.2d at 1056; 20 C.F.R. § 416.972(a)("Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before")).

Here, the ALJ found that

> The claimant worked after the application date, earning $515.95 in 2015, $875.38 in 2016, $6,129.50 in 2017, and $18,529.89 in 2018, $22,463.11 in 2019, and $17,955.40 in 2020[.] Accordingly, the claimant's earnings during parts of 2017, 2018, 2019, and 2020 were at substantial gainful activity levels.

AR 723 (citations omitted). However, the ALJ found that plaintiff had spent at least a continuous twelve-month period not performing any substantial gainful activity, and the remainder of the ALJ's decision addressed these periods. *Id.*

In challenging the ALJ's finding, plaintiff asserts that (1) her work did not rise to the level of substantial gainful activity; and (2) the ALJ should have considered whether the periods during which she worked were unsuccessful work attempts. Dkt. 17, at 3.

With respect to plaintiff's first assertion, the SSA's Program Operations Manual System ("POMS") sets forth the minimum monthly earnings for SGA. *See* POMS DI 10501.015, Table 2. For the years at issue here—2017, 2018, 2019, and 2020—these minimums were $1170, $1180, $1220, and $1260, respectively. *Id.* Plaintiff asserts that, with the exception of one quarter in 2019, her earnings never reached SGA levels. Dkt. 17, at 3–4. However, plaintiff's assertion is predicated on calculating her earnings separately for *each* job she worked in a given quarter, as opposed to determining her monthly income by aggregating her earnings from *all* work she performed in a given quarter. *Id.* at 4. In her reply, plaintiff points to 20 CFR 416.974(a)(1), which "states that the primary consideration in assessing SGA is 'earnings you derive from the work activity[.]'" Dkt. 19, at 3 (emphasis removed) (citing 20 CFR 416.974(a)(1)). Plaintiff avers that the singular word "activity" indicates that income from each

1   job is to be evaluated separately. *Id.* By this reasoning, a claimant could simultaneously work in

2   two part-time jobs, earning a gross income well above the SGA threshold, but found not to be

3   engaged in SGA so long as the income from *each* job remained below that threshold. The Court

4   finds defendant's contention—that the SGA determination at step one "looks to 'work activity'

5   represented by 'earnings' rather than limiting consideration of substantial gainful activity to one

6   job"—more persuasive. Dkt. 18, at 4.

7       With respect to plaintiff's second assertion, an unsuccessful work attempt may be found

8   when a claimant works for a period of six months or less and stopped working due to an

9   impairment. 20 CFR 416.974(c). Subsection (2) of this regulation provides that "[t]here must be

10  a significant break in the continuity of [the claimant's] work before we will consider that you

11  began a work attempt that later proved unsuccessful," and that a claimant "must have stopped

12  working or reduced [their] work below the substantial activity level because of [their]

13  impairment." 20 CFR 404.1527(c)(2). Here, plaintiff worked for three quarters each at

14  Cosmopolitan Kids Childrens' Academy and Seattle First Methodist Church, as well as four

15  quarters at Northwest Center. AR 575, 934–36. Plaintiff points to parts of the record that

16  indicates she left each of these jobs due to her severe impairments and, to support her position,

17  relies on *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999). Therein, the

18  Ninth Circuit held that a plaintiff's holding successive jobs that generally lasted no more than

19  two months could not be found to be engaged in SGA, because the 40-year old plaintiff "would

20  have to perform 150 jobs, at a rate of six jobs per year, to remain employed" until retirement.

21  *Gatliff*, 172 F.3d at 694. *Gatliff* is inapposite because, in this case, the plaintiff worked at several

22  jobs for much longer periods than the plaintiff therein.

23

24

1    Furthermore, plaintiff has not shown that any "significant break" took place between the

2    jobs she performed, another required element of an unsuccessful work attempt. 20 CFR

3    416.974(c)(2). In any event, the Commissioner was not required to make further findings into the

4    nature of plaintiff's performance at these jobs.

5    The Commissioner concedes that plaintiff's earnings in 2017 did not reach the threshold

6    amount for SGA; thus, the ALJ's finding that plaintiff engaged in SGA is erroneous as to that

7    calendar year. Dkt. 18, at 5. However, this error was harmless. Harmless error principles apply in

8    the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is

9    harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the

10   ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*,

11   454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. Here, plaintiff does not show

12   that the error caused prejudice or was of consequence in the ultimate nondisability determination.

13   The ALJ did not end his analysis at step one but, rather, found that plaintiff had still shown

14   periods of over twelve months in which she did not perform SGA and analyzed all five steps of

15   the sequential evaluation process. AR 723–36; *see, e.g. Geister v. Astrue*, 2010 WL 2867954 (D.

16   Ore. 2010) (after error at step one, "[t]he ALJ nevertheless went on to evaluate plaintiff's

17   impairments and functional limitations [...] Accordingly, the ALJ's error is harmless."). Further,

18   the ALJ did not rely solely on plaintiff's ability to perform SGA in evaluating plaintiff's

19   credibility and functional limitations, but considered the entire record performing the rest of the

20   sequential evaluation, citing to evidence dated throughout the relevant period and relying on

21   other reasons to find plaintiff not disabled. Accordingly, plaintiff has not shown harmful error.

22

23

24

**2. Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony**

Next, plaintiff avers that the ALJ should have fully credited her subjective testimony, and that the ALJ's failure to do so constituted harmful error. Dkt. 17, at 5.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971), and *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); and *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991)).  In evaluating a claimant's allegations of limitations, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). According to the Ninth Circuit, "we may not take a general finding-an unspecified conflict

between Claimant's testimony about daily activities and her reports to doctors-and comb the administrative record to find specific conflicts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see also Brown-Hunter v. Colvin,* 806 F.3d 487, 494 (9th Cir. 2015) ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination, [which] was legal error") (citing *Burrell*, 775 F.3d at 1139).

Here, plaintiff testified that she could not work due to insomnia that prevented her from sleeping more than two to three hours per night, difficulty concentrating due to racing thoughts and fatigue, difficulty socializing, and a low appetite—sometimes eating only one meal a day while weighing under 100 pounds. AR 42, 44–47, 842. Plaintiff also endorsed frequent suicidal ideation and panic attacks or "meltdowns" on a weekly basis, although she stated that these had subsided with medication. AR 44, 341. The ALJ found that, to the extent plaintiff's testimony described disabling limitations, it was inconsistent with a record of (1) normal mental status exams; (2) plaintiff's minimal efforts at treatment; (3) evidence of improvement with medication; (4) plaintiff's own inconsistent statements to health care providers; (5) a "situational component" to plaintiff's mental health issues; (6) plaintiff's activities of daily living; and (7) plaintiff's work activity. AR 727–31.

Plaintiff also raised issues with ALJ Robinson's evaluation of her subjective testimony on her first appeal in the Eastern District of Washington. *See* AR 468–76. That Court held that ALJ Robinson's findings of minimal treatment effort and inconsistent activities of daily living were supported by substantial evidence. AR 473–76. With regard to minimal treatment efforts, the Court first noted that "unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment may be the basis for an adverse credibility finding unless

1    there is a showing of good reason for the failure." AR 474 (citing *Orn v. Astrue*, 495 F.3d 625,

2    638 (9th Cir. 2007)). The Court noted examples of "good reasons," including "where the

3    evidence suggests lack of mental health treatment is part of a claimant's mental health

4    condition," and when "the claimant's failure to obtain treatment she cannot obtain for lack of

5    funds." *Id.* at 474–75 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); and

6    *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). Applying this to ALJ Robinson's

7    reasoning, the Court stated:

8            The record reflects that some of [p]laintiff's failure to engage in treatment
         was attributable to anxiety or a lack of health insurance. Plaintiff declined a
9         recommendation to group therapy due to her social anxiety. [AR] 343. Some
         instances of [p]laintiff's failure to seek health care were attributed to her lack of
10        insurance. [AR] 339 (Plaintiff reported she could not get treatment because she
         did not have insurance); [AR] 277 (Plaintiff had no health insurance and no
11        medical coupons); [AR] 270–272 (Plaintiff began seeking referrals after obtaining
         Medicaid health insurance). However, [] ALJ [Robinson] accurately observed that
12        once [p]laintiff did begin treatment, she only attended monthly counseling despite
         being recommended weekly counseling. [AR] 27; *see* [AR]257 (weekly
13        counseling recommended on September 12, 2013); [AR] 382 (weekly sessions
         recommended on July 9, 2014); [AR] 368 (weekly depression group
14        recommended on March 18, 2015); [AR] 362 (weekly sessions recommended on
         May 1, 2015); [AR] 356 (weekly outpatient treatment recommended on June 1,
15        2015). Plaintiff also failed to complete counseling homework and to pick up her
         prescriptions. *See* [AR] 368, 373. It is the ALJ's responsibility to resolve conflicts
16        in the evidence. *Andrews*[,] 53 F.3d [at] 1039[.] Where the ALJ's interpretation of
         the record is reasonable, it should not be second-guessed. *Rollins v. Massanari*,
17        261 F.3d 853, 857 (9th Cir. 2001). Here, although some of [p]laintiff's failure to
         seek treatment may have been attributable to anxiety or finances, [] ALJ
18        [Robinson] still reasonably concluded that [p]laintiff's failure to engage in
         treatment undermine[d] her subjective symptom testimony. This finding was
19        supported by substantial evidence.

20    AR 476. However, given that "[o]f the many reasons offered by [] ALJ [Robinson] to discredit

21    [p]laintiff's symptom testimony, only two"—plaintiff's activities of daily living and minimal

22    efforts at treatment—"were minimally supported by evidence in the record[,]" the Court reversed

23    and remand for further proceedings. *Id.*

24

1      In the decision presently before the Court, the ALJ gave additional reasoning and support

2 for his finding. For example, the ALJ noted that plaintiff's overall condition improved during

3 periods when she was compliant with medication and treatment regimens. The ALJ noted, for

4 example, that medication helped not only with plaintiff's panic symptoms but more generally

5 with her anxiety and depression as well—in 2013, plaintiff showed improvement while taking

6 citalopram; by February 2014, plaintiff was no longer experiencing panic attacks. AR 729 (citing

7 AR 268, 341). Then, in 2016, plaintiff apparently felt better to the point that she ceased taking

8 medications for six months and only gradually experienced renewed depression symptoms that

9 compelled her to seek care. AR 729 (citing AR 666). This improvement ultimately culminated in

10 plaintiff performing substantial gainful activity and attending classes between 2018 and 2020.

11 AR 731.

12      Thus, after the District Court remand, the ALJ provided additional reasoning for rejecting

13 plaintiff's symptom testimony that was supported by the record. Taken together, the ALJ's

14 reasoning described herein was supported by substantial evidence. Thus, the Court need not

15 address the ALJ's other reasons for discounting plaintiff's subjective testimony, as any error

16 would be harmless. *See Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th

17 Cir. 2004) (concluding that even if record did not support one stated reason for discounting

18 claimant's testimony, any error was harmless).

19      **3. Whether the ALJ Properly Evaluated the Medical Opinion Evidence**

20      Next, plaintiff assigns error to the ALJ's evaluation of medical opinions from six

21 examining medical sources. Dkt. 17, at 12. The Court addresses each source in turn.

22      Because other medical source opinions contradicted these sources' opinions regarding

23 marked limitations, the ALJ had to provide specific and legitimate reasons supported by

24

substantial evidence[1] to reject their opinions in this regard. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1043).

    *a. Dr. Barnard*

    First, plaintiff contends that the ALJ erred by giving little weight to the September 2013 opinion from consultative examiner Philip Barnard, Ph.D. Dkt. 17, at 13.[2] The prior remand order from the Eastern District of Washington addressed this issue, holding that ALJ Robinson permissibly discounted Dr. Barnard's opinion—first, because Dr. Barnard inexplicably opined that plaintiff's impairments were moderate but would cause marked limitations; second, because "Dr. Barnard was not familiar with [p]laintiff's subsequent treatment notes showing improvement in panic attacks," which had been plaintiff's "chief complaint" to Dr. Barnard. AR 480.

    The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citations omitted). The law of the case doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.* Here, although the prior ruling issued from another district court, the decision concerned the same issue in the same case by a court of equal rank. *See Smith Intern., Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1576 (Fed. Cir. 1985) (federal appellate court applied law of the case doctrine in refusing to review prior decision in the same case issued by appellate court of equal rank). The Court will not disturb the

---

[1] The Administration has amended regulations for evaluating medical evidence, but the amended regulations apply only to claims filed on or after March 27, 2017 and therefore are not relevant to this case. *See* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before March 27, 2017); 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed after March 27, 2017).

[2] Reviewing psychologist Phyllis Sanchez, Ph.D. reviewed Dr. Barnard's opinion and concurred with Dr. Barnard. The ALJ discounted this opinion for the same reasons he discounted Dr. Barnard's opinion. AR 733.

1    previous holding in the Eastern District indicating that the ALJ's reasoning in giving Dr.

2    Barnard's opinion little weight was supported by substantial evidence and free of legal error.

3            *b. Dr. Cline*

4            Next, plaintiff assigns error to the ALJ's assessment of a July 2015 evaluation from

5    Rebekah Cline, Ph.D., who opined that plaintiff would have marked limitations in her ability to

6    communicate effectively and in completing a normal workday. AR 633. The ALJ gave the

7    opinion little weight, reasoning that Dr. Cline (1) did not review plaintiff's records; (2)

8    diagnosed moderate depression and overall moderate symptoms without explaining the greater,

9    marked limitations, which were unsupported by the record; (3) opined that the duration of

10   disability could be as little as six months; and (4) opined to limitations that "appear[ed]

11   somewhat inconsistent with her mental status examination[.]" AR 733. The Court addresses the

12   ALJ's second reason, which, if supported by substantial evidence, is a specific and legitimate

13   reason for rejecting Dr. Cline's opinion.

14           The ALJ specifically found that Dr. Cline "diagnosed moderate depression and an overall

15   severity of moderate without explanation for the greater marked limitations." AR 733. In

16   plaintiff's first District Court appeal, as discussed *supra* Section 3.a., the Court held that a lack of

17   explanation as to how overall moderate limitations could result in marked impairments was a

18   valid reason to discount Dr. Barnard's opinion, and this feature manifested in Dr. Cline's opinion

19   as well. AR 479–80, 633–34.

20           In addition, the ALJ noted that these marked limitations were inconsistent with the

21   longitudinal record. AR 733. In support, the ALJ includes a string of citations covering over 50

22   pages of records, which are discussed in greater detail earlier in the opinion. *Id.*; *see* AR 728–29

23   (citing AR 233, 237, 244, 247, 255, 258, 268, 270, 273, 285, 287, 316, 321, 339–42, 348–51,

24

356, 358–59, 361, 364–65, 368, 373–75, 378, 380, 382, 614, 619, 623, 635, 637, 639–40, 645–46, 648–49, 652–53, 659, 661, 663, 665–68, 671–72, 694, 699–700, 705, 709–10, 713–14, 997, 1000, 1003–7). The Court has reviewed these records and found that they contain objective evidence clearly supporting the ALJ's rejection of the marked limitations.

The ALJ took note of many examinations that showed plaintiff was alert and oriented, with memory, concentration, focus, and attention span within normal limits. AR 728 (citing AR 635, 640, 649, 724, 728, 753, 786, 801, 804, 994, 1000, 1115). The ALJ also noted that examinations were also indicative of some social acumen, with clinicians regularly observed good eye contact, cooperation, openness, and engagement. AR 728 (citing AR 348–50,359, 361, 380, 634, 639, 648, 786, 994, 999, 1108). The ALJ did not ignore evidence of "up and down progress with [plaintiff]'s condition," noting, for example, periods of "increased depression symptoms," weight loss, poor academic performance, and examinations in which plaintiff displayed a depressed or flat affect. AR 727–28 (citing AR 270, 276, 348–51, 365, 368, 635, 666). However, the ALJ contrasted these instances with plaintiff's improvement during periods when she complied with treatment, as well as many instances in which plaintiff's mood and affect were normal. AR 729 (citing AR 268, 270, 653, 659, 804, 816). The ALJ's conclusion that overall medical evidence did not support marked limitations was sound.

Thus, while some of these findings could be read to indicate marked limitations, many others may be read to support only moderate limitations in these areas. Where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan,* 169 F.3d at 599, 601)).

c. *Dr. Wilkinson*

Plaintiff, next, avers that the ALJ erred in giving little weight to the opinion of consultative examiner Dr. Wilkinson, who evaluated plaintiff in June 2017. Dr. Wilkinson assessed marked limitations in plaintiff's ability to maintain appropriate behavior in a work

1   setting and in her ability to perform activities within a schedule, maintain regular attendance, and

2   be punctual within customary tolerances. AR 638. In rejecting Dr. Wilkinson's opinion, the ALJ

3   reasoned that (1) marked limitations were inconsistent with the longitudinal record; (2) Dr.

4   Wilkinson reviewed no records; (3) Dr. Wilkinson found plaintiff's depression and overall

5   severity of plaintiff's condition to be only moderate; and (4) Dr. Wilkinson opined that plaintiff's

6   impairments would last only 8 months with treatment. The ALJ's fourth reason for rejecting the

7   opinion is dispositive. An impairment and any work-related limitations stemming from the

8   impairment must last or be expected to last for twelve months to be disabling under the

9   regulations. *See* 42 U.S.C. §423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002).

10  Given that Dr. Wilkinson indicated that plaintiff's limitations would not last twelve consecutive

11  months, the duration requirement for giving little weight to the opinion. *See Karpinski v.*

12  *Berryhill*, 757 F. App'x 631, 633 (9th Cir. 2019) (ALJ "reasonably took into account [a

13  physician's] opinion that [the plaintiff's] limitations would last eight months, short of the twelve

14  months necessary to establish eligibility for disability benefits" in assigning little weight to the

15  physician's opinion).

16         Plaintiff contends that this was not a valid reason to reject Dr. Wilkinson's opinion,

17  because other evidence in the record supports that her depression and anxiety symptoms lasted

18  for at least twelve months. Dkt. 17, at 18. Dr. Wilkinson, however, specifically opined that

19  plaintiff's impairment was not expected to last for twelve consecutive months, and plaintiff's

20  alternative interpretation of the evidence provides no basis for finding error. *See James H. v.*

21  *Saul*, 2020 WL 6379309, at *8 (E. D. Wash. 2020) ("[The provider] specifically opined that [the

22  plaintiff's] impairment was not expected to last for a 'continuous period of not less than 12

23

24

1    months,' thus, the durational requirement was not met. This was a specific and legitimate reason

2    for the ALJ to reject [the provider's] opinions.").

3          As the ALJ gave a specific and legitimate reason for rejecting Dr. Wilkinson's opinion,

4    the Court need not evaluate the ALJ's other reasons, as any error would be harmless. *See Molina*,

5    674 F.3d at 1115.

6          *d. Dr. Kenderline*

7          Dr. Kenderline assessed plaintiff as having moderate limitations in the functional areas of

8    completing a normal work day and work week; maintaining appropriate behavior and

9    communicating and performing effectively in a work setting; making simple work-related

10   decisions; and understanding, remembering, and persisting in tasks by following detailed

11   instructions. AR 647. The ALJ gave this opinion "some weight," but found that "the record

12   suggests [plaintiff] at times leans more toward moderate than mild symptoms." AR 732. Plaintiff

13   contends that the ALJ failed to include Dr. Kenderline's "significant" limitations in his RFC

14   determination, specifically the "moderate" limitation in completing a normal work day and work

15   week. Dkt. 17, at 18.

16         An ALJ is not required to provide reasons in support of incorporating a medical opinion

17   into the residual functional capacity determination. *See Turner v. Comm'r of Soc. Sec. Admin.*,

18   613 F.3d 1217, 1223 (9th Cir. 2010) ("the ALJ did not need to provide 'clear and convincing

19   reasons' for rejecting [a treating doctor's] report because the ALJ did not reject any of [his]

20   conclusions"). However, "[w]here the ALJ accepts the medical assessment of moderate

21   limitations, those limitations must be accounted for in the RFC." *Wascovich v. Saul*, 2019 WL

22   4572084, at *4 (E.D. Cal. 2019) (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013)).

23   Plaintiff avers that even a moderate limitation in the ability to complete a normal work day or

24

1    work week without interruption from psychologically based symptoms is preclusive of any

2    ability to work, but fails to cite any case law that supports this interpretation. Dkt. 17, at 18.

3    Instead, plaintiff points to Program Operations Manual System ("POMS") DI 25020.010(B)(3),

4    which states only that this is one of several mental abilities required to perform unskilled work

5    and that the requirement of being able to complete a work day and work week is "usually strict."

6    "POMS may be entitled to some deference 'to the extent it provides a persuasive interpretation

7    of an ambiguous regulation, but it does not impose judicially enforceable duties on either this

8    court or the ALJ.'" *Hartley v. Colvin*, 672 F. Appx. 743, 743 (9th Cir. 2017) (quoting *Carillo-*

9    *Years v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011)). Plaintiff fails to identify any ambiguity in

10    the applicable regulations. Further, plaintiff does not point to any specific conflict between the

11    RFC and Dr. Kenderline's opined moderate limitations; nor has the Court found any such

12    conflict. The ALJ did not err in evaluating Dr. Kenderline's opinion.

13            *e. Drs. Czysz and Knapp*

14            Finally, plaintiff assigns error to the ALJ's evaluation of opinions from consultative

15    examiners James Czysz, Psy.D., and Geordie Knapp, Psy.D. Dkt. 17, at 19–20. Dr. Czysz

16    evaluated plaintiff in 2019 and opined that plaintiff would have marked limitations in

17    maintaining attendance, being punctual, and completing a normal work day or work week. AR

18    993. Dr. Knapp evaluated plaintiff in 2020 and found that plaintiff would have marked

19    limitations in her ability to maintain appropriate behavior, ask simple questions or request

20    assistance, adapt to changes in a routine work setting, and be punctual, in addition to severe

21    limitations in her ability to communicate and perform effectively and complete a normal work

22    day or week. AR 998. The ALJ evaluated the opinions in conjunction and gave them little

23    weight, finding that they were (1) inconsistent with the longitudinal treatment notes, (2)

24

1  uninformed by a review of plaintiff's records and overly reliant on her subjective reports; and (3)

2  inconsistent with the doctors' own mental status examinations.

3       The Court, again, focuses on the ALJ's contrast of marked and severe limitations with the

4  overall record. As discussed above, *supra* Section 3.b., the ALJ found that plaintiff's symptoms

5  were generally manageable so long as plaintiff remained compliant with her medication regimen.

6  Furthermore, the ALJ cited records that showed plaintiff was engaged in SGA during the period

7  in which both of these evaluations took place, which would clearly undermine a finding of severe

8  limitations in plaintiff's ability to complete a normal work day and work week and to

9  communicate and perform effectively in a work setting. AR 731, 733. While the ALJ did not

10  explicitly state this conclusion, the Court is not "deprived of [its] faculties for drawing specific

11  and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

12  Cir. 1989). Because the ALJ's findings were supported by substantial evidence, plaintiff has not

13  shown harmful error.

14  CONCLUSION

15       Based on these reasons and the relevant record, the Court **ORDERS** that this matter be

16  **AFFIRMED**.

17       **JUDGMENT** shall be for the defendant and the case shall be closed.

18       Dated this 8th day of December, 2022.

19

20

21  J. Richard Creatura
   Chief United States Magistrate Judge

22

23

24